MARTIN J. MCCUE, (# 018849)
PATRICK F. KEERY, (# 030971)

**KEERY MCCUE, PLLC**
6803 EAST MAIN STREET, SUITE 1116
SCOTTSDALE, AZ 85251
TEL. (480) 478-0709
FAX (480) 478-0787
MJM@KEERYMCCUE.COM
PFK@KEERYMCCUE.COM
*ATTORNEYS FOR DEBTOR*

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>**ROBERT THOMAS BACK AND LINDA MARIE BACK**<br><br>Debtor. | Chapter 11<br><br>Case No. 2:19-bk-13684-BKM<br><br>**DEBTORS' RESPONSE TO UNITED STATES TRUSTEE'S MOTION TO REMOVE THE DEBTORS-IN-POSSESSION PURSUANT TO 11 U.S.C. §1185, OR IN THE ALTERNATIVE, MOTION TO CONVERT OR DISMISS CASE WITH PREJUDICE** |

Robert Thomas Back ("**Mr. Back**") and Linda Marie Back ("**Mrs. Back**" and together with Mr. Back collectively, the "**Debtors**"), as Debtor and Debtor-in-Possession in the above-entitled Subchapter V Chapter 11 proceeding, hereby provides their response ("**Response**") to the *United States Trustee's Motion to Remove the Debtors-in-Possession Pursuant to 11 U.S.C. § 1185, or in the Alternative, Motion to Convert or Dismiss Case With Prejudice* ("**Motion**"). This Response is supported by the following Memorandum of Points and Authorities together with the: (I) *Declaration of Linda M. Back* ("**L. Back**

**Decl.**"); (II) *Declaration of Jennifer Back* ("**J. Back Decl.**"); (III) *Declaration of Leo Odle, D.O.* ("**Odle Decl.**"); which are attached hereto as **Exhibits A, B, C** respectively.

**DATED** this 30th day of November, 2020

                         **KEERY MCCUE, PLLC**

                         By: /s/ *Patrick F. Keery* (#030971)
                            Patrick F. Keery, Esq.
                            *Attorneys for Debtor*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. RELEVANT FACTS

1. On October 28, 2019 ("**Petition Date**"), Debtors filed their petition for relief *pro se* under Chapter 7 of the Bankruptcy Code commencing the instant bankruptcy proceeding ("**Bankruptcy Proceeding**").

2. On November 4, 2019, prior counsel for Debtors filed a Motion to Convert Case to Chapter 11 ("**Motion to Convert**")[Dkt. No. 18]. An Order Granting the Motion to Convert was entered by the Court on November 5, 2019 [Dkt. No. 21].

3. On May 27, 2020, prior counsel for Debtors filed an Amendment to Petition to Elect to Proceed Under Subchapter V. On June 2, 2020 an Appointment of Subchapter V Trustee and Verified Statement of Trustee was filed by the U.S. Trustee's office [Dkt. No. 116]. On June 26, 2020 the U.S. Trustee's office filed a *Motion to Strike Debtors' Amended Petition* ("**Motion to Strike**")[Dkt. No. 129]. On July 6, 2020 prior counsel for Debtors filed a *Response to the Motion to Strike* [Dkt. No. 131]. On August 6, 2020, a final hearing on the Motion to Strike was held and the Court denied the Motion to Strike (Dkt. No. 155).

4. On or about October 19, 2020, the Debtors filed their *Petition for Authority to Retain Counsel* seeking to employ the firm of Keery McCue, PLLC ("**KM**") as bankruptcy counsel [Dkt. No. 176]. On or about October 19, 2020, the Court entered an order employing KM [Dkt. No. 180].

5. At employment, Mr. Back informed KM of the non-genuine and inaccurate documents that had been created by Mr. Back and filed in connection with the

Bankruptcy Proceeding. Given the foregoing, KM immediately endeavored to disclose the issues to the Sub V Trustee, Lynton Kotzin ("**Mr. Kotzin**") and Patty Chan ("**Ms. Chan**") from the Office of the United States Trustee ("**USTO**"). To that end, counsel for the Debtors had numerous calls with Mr. Kotzin and Ms. Chan.

6. An initial hearing regarding confirmation of Chapter 11 Small Business Subchapter V Plan was held on October 21, 2020 ("**Initial Confirmation Hearing**"). At the Initial Confirmation Hearing, counsel for the Debtors informed the Court about the issues and his discussions with Ms. Chan and Mr. Kotzin. Further, the Debtors withdrew their proposed Plan of Reorganization and informed the Court that they intended to file an Amended Plan of Reorganization ("**Amended Plan**"). The Court ordered that the Amended Plan was to be filed on or before November 20, 2020 [Dkt. No. 185]. Finally, counsel for the Debtors advised the Court that the Debtors would be revising and amending their schedules and monthly operating reports to correct the record.

7. On or about November 10, 2020, the Debtors filed an amended Declaration of Evidence of Employer Payments to correct the Debtors' filing currently at Dkt. No. 36 [Dkt. No. 192].

8. On or about November 10, 2020, the Debtors filed amendments to their schedules and statements [Dkt. No. 194 and 195].

9. On or about November 10, the Debtors filed the amended monthly operating reports [Dkt. Nos. 197, 198, 199, 200, 201, 202, 203, 204, 205].

10. On or about November 12, 2020, the parties attended a continued status conference where Ms. Chan advised the Court of her intent to file the Motion. On or about November 16, 2020, the Court entered an order setting a hearing on the Motion for December 2, 2020 [Dkt. No. 211].

11. On November 16, 2020, the UST filed its Motion [Dkt. No. 208].

12. On November 20, 2020, the Debtors timely filed the Amended Plan [Dkt. Nos. 217 and 217-1].

## II. LEGAL ARGUMENT

### A. INTRODUCTION

Through its Motion, the United States Trustee's Office has requested that this Court either: remove the Debtors as debtors-in-possession; convert the case to Ch. 7, or dismiss with prejudice imposing a 5-year filing bar (Motion at 1, Lines 20-23). While the Debtors understand the USTO's valid concerns, they assert that: Mr. Back lacked mental capacity when he undertook the various misrepresentations made in filings to this Court; Mrs. Back was innocent of any misstatements or wrongdoing; and finally, the interests of the Debtor's, the creditors and the estate are best served by permitting the Debtors to proceed through this reorganization with Mr. Back removed and Mrs. Back at the helm.

### B. LEGAL STANDARD

#### i. The Court Should Not Remove the Debtors from Being Debtors-in-Possession.

There can be no argument that the relief sought by the USTO is within the discretion of this Court. Section 1185 provides:

> On request of a party in interest, and after notice and a hearing, the court shall order that the debtor shall not be a debtor in possession for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor, either before or after the date of the commencement of the case, or for failure to perform the obligations under a plan confirmed under this subchapter. 11 U.S.C. § 1185(a).

Given that the Small Business Reorganization Act of 2109 ("**SBRA**") only went into effect in February 2020, there is not much settled law related to Section 1185. The Debtors do note that, as discussed herein and in the declarations supporting this Objection, Mrs. Back is competent and was previously unaware of the issues that led us to this unfortunate proceeding. Given the foregoing, while cause may exist to remove Mr. Back as debtor-in-possession (were the Court to believe Mr. Back competent at the time of the misstatements), cause does not exist to remove Mrs. Back should she agree to assume the mantle and shoulder the burdens required under the Bankruptcy Code. Removal of Mrs. Back is not warranted under Section 1185.

Additionally, given Mrs. Back's willingness and ability to handle the responsibilities of the bankruptcy estate, removal is inappropriate. It is indisputable that the appointment of a Ch. 11 Trustee will add significant additional administrative expense which would further reduce payments to unsecured creditors, if any. Given the universe of assets and debts in this proceeding, coupled with the already accrued administrative expenses, removal of the Debtors from possession will only exacerbate the issues and harm the creditors. Removal is not financially feasible for an estate of this size.

### ii. Conversion or Dismissal of the Case is Not Warranted.

Section 1112(b) contains a list of ten grounds amounting to "cause" entitling a party

in interest to move for a dismissal or conversion of a chapter 11 case. *See* 11 U.S.C. § 1112(b); *see In re Hinesley Fam. Ltd. Partn. No. 1*, 460 B.R. 547, 551 (Bankr. D. Mont. 2011) ("Conversion or dismissal is provided for at § 1112(b), which sets forth a nonexclusive list of factors that warrant conversion or dismissal."). Because one ground for cause is sufficient, the movant need not demonstrate the additional factors listed in section 1112(b), although more than one factor may be present. *Loop Corp. v. U.S. Trustee*, 290 B.R. 108, 112 (D. Minn. 2003). The Bankruptcy Court has broad discretion in determining whether cause exists to dismiss or convert a case. *In re ABEPP Acquisition Corp.*, 191 B.R. 365, 369 (Bankr. N.D. Ohio 1996); *In re Kanterman*, 88 B.R. 26, 27 (Bankr. S.D.N.Y. 1988); *see also Toibb v. Radloff,* 501 U.S. 157, 165 (1991) ("[T]he Code gives bankruptcy courts substantial discretion to dismiss a chapter 11 case in which the debtor files an untenable plan of reorganization."); *see also In re All Denominational New Church*, 268 B.R. 536, 538 (8th Cir. BAP 2001) ("Dismissal is proper under [section 1112(b)(2)] if the court determines that it is unreasonable to expect that a plan can be confirmed in the case."). The determination of whether cause exists must be made on a case-by-case basis. *In re Young*, 76 B.R. 376, 378 (Bankr. D. Del. 1987).

If a court finds a "continuing loss to or diminution of the estate ***and*** absence of a reasonable likelihood of rehabilitation," (***emphasis*** added) cause exists whereby a court may dismiss a chapter 11 case. *See* 11 U.S.C. § 1112(b)(1); *First Jersey Nat'l Bank v. Brown*, 951 F.2d 564, 572 (3d Cir. 1991); *In re ABEPP Acquisition Corp.*, 191 B.R. at 368; *In re Kanterman*, 88 B.R. at 29. Section 1112(b)(4)(A) contemplates a "twofold" inquiry into whether there has been a "continuing diminution of the estate and absence of a

reasonable likelihood of rehabilitation." *In re Contl. Holdings, Inc.*, 170 B.R. 919, 931 (Bankr. N.D. Ohio 1994)(quoting *In re Photo Promotion Associates, Inc.,* 47 B.R. 454, 458 (Bankr.S.D.N.Y.1985); *see also In re Citi–Toledo Partners*, 170 B.R. 602, 606 (Bankr.N.D.Ohio 1994) ("Section 1112(b)(4) contemplates a 'two-fold' inquiry into whether there has been a continuing diminution of the estate and absence of a reasonable likelihood of rehabilitation."). As such, a party in interest **must** make a showing of both prongs to amount to "cause" supporting a dismissal or conversion of a chapter 11 case.

There has been no substantial or continuing loss to or diminution of the estate, nor the absence of a reasonable likelihood of rehabilitation as required by Section 1112(b)(4)(A). The Amended Plan makes provision for the payment of all administrative fees (which are significant) and a payment to general unsecured creditors of fifty thousand dollars, which is fifty-thousand more dollars than will flow in a conversion or dismissal. As demonstrated in the Amended Plan, the payments contemplated under said plan are feasible and the Debtors are close to confirmation. Further, without inferring that the misstatements made by Mr. Back before this Court are not egregious, there has not been a gross mismanagement of the estate as required by Section 1129(b)(4)(b). The misstatements overstated the bankruptcy estates' assets and income, but were not misstatements where a debtor was concealing assets to deprive creditors of what they were entitled to under the Bankruptcy Code. Further, Mrs. Back is now in control of the Debtors' accounts, reporting, and responsibilities. Given the foregoing, the Debtors submit that cause has not been established under Sections 1129(b)(4)(A)-(B).

-8-
RESPONSE TO UNITED STATES TRUSTEE'S MOTION TO REMOVE THE DEBTORS-IN-POSSESSION
Case 2:19-bk-13684-BKM    Doc 218    Filed 11/30/20    Entered 11/30/20 15:21:07    Desc
Main Document    Page 8 of 15

### C. Mr. Back Was Impaired At the Time of the Misstatements.

It is undisputed that Mr. Back inexplicably inflated his assets and income in this Ch. 11 proceeding. These misstatements would have inevitably caused **MORE** to be paid to creditors than was required under the Bankruptcy Code. The Debtors have grasped the gravity of the issues before this Court. No one can logically justify the filing of manufactured documents (appended to sworn filings) in Bankruptcy Court and candidly, such behavior cannot be tolerated for fear of corrupting the entire bankruptcy system, which requires absolute honesty, disclosure and notice to affected parties. Undersigned counsel has labored to understand the facts and the mistakes, and has filed amended schedules with the help of the Debtors. Further, counsel has been transparent and cooperative with the UST's Office and the Sub V Trustee, Mr. Kotzin. Moreover, Mrs. Back has been very helpful in implementing the necessary corrective measures to right the proverbial ship.

That said, it is clear that Mr. Back was not acting in a legally competent manner when he was preparing and filing the offending documents. Under the "best interests of the creditors test," the overstatement of non-exempt assets results in a higher liquidated value, and thus a larger payment to general unsecured creditors. Likewise, Mr. Back's overstatement of income (under Section 1325 analysis (*see* 11 U.S.C. § 1129(a)(15)(B)), would inevitably have resulted in the Debtors' Plan paying more to unsecured creditors than is mandated by the Bankruptcy Code. Mr. Back's misstatements inevitably only harmed him (and the integrity of the bankruptcy process).

The Debtors note that Mr. Back has, until recently, been the person in charge of complying with the requirements to remain in this proceeding, and candidly, was not competent to do so. Mr. Back has a history of serious medical conditions and has sustained a decline in cognitive ability. Further, Mr. Back is on numerous medications which further alter his senses and can cause confusion and lack of cognitive brain function.

### i. Odle Declaration.

To understand the forces at play here requires medical analysis, as discussed in the declaration dated November 10, 2020 that was provided by Dr. Lee Odle, D.O. ("**Odle Decl.**")[**Exhibit D** hereto]. Dr. Lee Odle, D.O. ("**Dr. Odle**") is a licensed Medical Doctor in the State of Arizona (Odle. Decl. at 1, Lines 1-2). Dr. Odle has been treating Mr. Back for over thirteen years and has treated him on over 75 occasions (*Id*. at Lines 2-4). Starting in 2005, Mr. Back suffered a serious brain concussion and a subsequent 2006 ruptured blood vessel in the brain that required emergency brain surgery (*Id*. 4-7). In February 2019, Mr. Back experienced difficulties walking, using his limbs and thinking clearly (*Id.* at Lines 12-13). Upon further examination it was discovered that Mr. Back's blood level was life threateningly low (*Id*. at 15-16). It was later discovered through an MRI that Mr. Back appeared to have a Para-Aortic Lymphoma, which was later confirmed as a non-Hodgkin's cell (*Id*. at 21-24). Mr. Back underwent treatment for his cancer (*Id*. at 24). Dr. Odle further noted that Mr. Back only has one kidney (Id. at 26-27) and is on a host of medications, including without limitation, Clonodine and Miraplex (*Id*. at 27). Dr. Odle noted that a side effect of these medications is diminished mental and physical capability (*Id*. at 27-28). Dr. Odle went on to advise that Mr. Back's brain lacks oxygen

and this can cause normal behavior at one moment and confusion / lack of cognitive brain function at another (*Id*. at 28-30).  In Dr. Odle's opinion, Mr. Back's cognitive brain functions have been diminished as a result of his illness and medications (Id. at Lines 30-32).

### ii. Jennifer Back Declaration.

Mr. Back's daughter, Jennifer Back ("**Jennifer**"), has also provided a declaration dated November 5, 2020 ("**J. Back Decl.**").  Jennifer is a registered nurse licensed in Arizona, California, New York and Nevada and she has extensive experience in assessing the mental health of patients due to her medical background and training (J. Back Decl., ¶2).  Jennifer has served as a nurse treating patients who have come to the hospital with psychiatric, psychological, neurological and mental health issues and she is often called upon to evaluate a patient's mental health capacity (*Id*., ¶3, 4).  Jennifer interacts with Mr. Back often and is able to formulate conclusions about his medical and mental health capacities (*Id*., ¶6).  Jennifer is also familiar with Mr. Back's medical history as she was often present during those occasions (*Id*., ¶7).  In 2006, Mr. Back hit his head in the garage which caused a major blood clot in his left eye (*Id*., ¶8-9).  Also in 2006, Mr. Back had significant ear pain and hospitalization was necessitated (*Id*., ¶10-11).  When hospitalized at Banner Desert Medical Center, it was determined that Mr. Back had Cerebrovascular Accident ("**CVA**") which required immediate surgery (and helicopter transport) to Barrows Neurological Institute (*Id*., 12-15).  After the surgery for the CVA, Mr. Back was in the Intensive Care Unit ("**ICU**") for eight (8) days and underwent several months of outpatient neurorehabilitation (*Id*., ¶16-17).  Jennifer also confirms that in 2019

while Mr. Back was at a convention in Santa Monica, California, he experienced discomfort and was forced to return home immediately where he was taken to Mercy Hospital Emergency Room (*Id*., ¶18-21). It was discovered while at the hospital that Mr. Back had a severe depletion of blood volume, low blood count and multiple blood transfusions treatments were undertaken (*Id*., ¶22-23). The doctors were unable to ascertain the cause of the low blood level (*Id*. at 24-25). Finally, in 2019, an MRI detected an anomaly in Mr. Back's central body cavity between the spinal cord and internal organs which was believed to be Lymphoma found on the Para-Aortic Lymph Nodes and it is believed that this condition is what led to the previously discussed low blood levels (*Id*.,¶27). Jennifer has had numerous contacts with Mr. Back over the years and has noticed: (i) a decline in his mental health; (ii) a decrease in cognitive mental health; and (iii) a decline in cognitive abilities (*Id*., ¶28, 30). Symptoms of this decline include, confusion, saying things that do not necessarily make sense, and not knowing what he has been or is doing (*Id.,* ¶28). Jennifer further confirmed that Mr. Back is currently taking, without limitation, Mirapex, Clonidine, Hydralazine, and Furosemide – which can contribute to among other things, somnolence and confusion.

### D. Mrs. Back Was Unaware of Mr. Back's Misstatements.

As the Court knows, this Bankruptcy Proceeding involves two (2) debtors, including Mr. Back's wife, Mrs. Back. This Bankruptcy Proceeding was commenced pro se as a Ch. 7 proceeding by Mr. Back (L. Back. Decl., ¶3). It is also noteworthy that the debts that drove the Debtors to file a petition for relief all arise from Mr. Back's business dealings as the Back's generally lived an austere personal lifestyle (*Id*., ¶4). While Mrs.

Back did sign the petition, schedules and statements, amendments thereto and the monthly operating reports, she did not personally prepare such filings and did not know that any of the filings were erroneous or manufactured (*Id*., ¶5). Mrs. Back believed that the bank account at Bank of America ending in 4169 (the "**BAC Account**") existed and that Mr. Back was receiving payment of fees for consulting from Senergy Solar Power ("**Senergy**"), and as such had no reason to question the accuracy of the pleadings filed with this Court (*Id*., 6-8). Robert only finally disclosed the false filings to Mrs. Back prior to a meeting with bankruptcy counsel where transition of control of the bankruptcy estate to Mrs. Back were to be discussed (*Id*., ¶9). Once Mrs. Back learned of the issues, she immediately reviewed and approved the amendments necessary to correct the record immediately ("**Amended Filings**")[*see* Dkt. Nos. 192, 194, 195, 197, 198, 199, 200, 201, 202, 203, 204, 205](*Id.,* ¶10). Based on Robert's mental incapacity and poor previous judgment, he has agreed to step aside so that Mrs. Back can handle their financial affairs (*Id.,* ¶11). Moreover, Mrs. Back is competent, willing and able to undertake the duties and authorities so that the Debtors may proceed in this Ch. 11 Proceeding (*Id*., ¶12). Finally, Mrs. Back implores this Court to see past Mr. Back's illogical transgressions so that the Debtors can reorganize their affairs which will permit the Debtors to retain their principal residence (which was Mrs. Back's mother's home) and perform under the plan which has been proposed which pays unsecured creditors more than they would receive in a converted case (*Id*., ¶13)

**E. Conversion or Dismissal Is Not in the Best Interests of the Creditors and the Estate.**

-13-
RESPONSE TO UNITED STATES TRUSTEE'S MOTION TO REMOVE THE DEBTORS-IN-POSSESSION
Case 2:19-bk-13684-BKM    Doc 218    Filed 11/30/20    Entered 11/30/20 15:21:07    Desc
Main Document    Page 13 of 15

Dismissal or conversion of a chapter 11 case is a two-step process. *In re OptInRealBig.com, LLC*, 345 B.R. 277, 282 (Bankr. Colo. 2006). First, the court must determine if cause exists for conversion or dismissal of the chapter 11 case. *Id.* Next, the court must consider whether conversion or dismissal of the case is in the best interests of the creditors and the estate. *Id.* Once cause is demonstrated, a court must base its decision to convert or dismiss on "the best interest of creditors and the estate." *see* 11 U.S.C. § 1112(b).

As previously discussed, "cause" has not been established as required under the Code. The Debtors have timely filed their Amended Plan, Mrs. Back has assumed control of the bankruptcy estates' assets and responsibilities in this proceeding, and the proposed Amended Plan pays creditors fifty thousand dollars more than they would receive in a converted case.

Conversion or dismissal neither benefits the creditors, nor is it in the best interest of the Debtor or the estate. A conversion would ultimately result in further delays and administrative fees. Further, given the very limited assets in the estate, there would be no distributions provided to unsecured creditors after paying the already accrued Ch. 11 administrative claims and imputed Ch. 7 liquidation costs. As such, conversion is not in the best interest of the creditors and the estate.

### III. CONCLUSION

**WHEREFORE**, the Debtor prays that this Court enter an order denying the Motion; and permitting the Debtors to complete their Ch. 11 Reorganization process; and for such further and other relief.

///

///

///

///

-14-
RESPONSE TO UNITED STATES TRUSTEE'S MOTION TO REMOVE THE DEBTORS-IN-POSSESSION
Case 2:19-bk-13684-BKM    Doc 218    Filed 11/30/20    Entered 11/30/20 15:21:07    Desc
Main Document    Page 14 of 15

**DATED** this 30th day of November, 2020

**KEERY MCCUE, PLLC**

By: /s/ *Patrick F. Keery* (#030971)
Patrick F. Keery, Esq.
*Attorneys for Debtor*

**COPY** of the foregoing served via email to:

Office of U.S. Trustee
230 North First Ave., Suite 204
Phoenix, AZ 85003-1706
Email: ustpregion14.px.ecf@usdoj.gov
Email: patty.chan@usdoj.gov

Lynton Kotzin, Subchapter V Trustee
Kotzin Valuation Partners
2800 N. Central Avenue
Suite 1725
Phoenix, AZ 85004

By: /s/ *Mollie Thompson*